Good morning, Your Honor. May it please the Court. My name is Eric Nystrom. I represent the appellant defendant in this case, Stored Value Cards, also doing business as NUMMI Financial and Stride Bank. First of all, I'd like to reserve four minutes for rebuttal. We're here on an appeal of a denial of motion to compel arbitration, and there are two fundamental problems with this order. Counsel, before you get to those problems, can you address there's a discrepancy in your argument? I don't understand. Okay. So it goes to the heart of the record here. On the one hand, we have a card that says you accept the terms upon use, and then we have an agreement that says when you accept the card, you agree to the terms, to these terms. Which is it? I think that Which one is controlling here? The legal analysis that I think is controlling is under the Centoro case, Your Honor. We can put on the card that acceptance of the card is agreement to the terms and conditions. Well, the card says use. The card says use, but the agreement says acceptance of the card. Correct. And you're right. There is an inconsistency there. I think that in terms of acceptance of the card, I don't think that's going to be legally controlling under the circumstances of this particular case. The thing that I do think is controlling is the use of the card. Wait. So you're saying the trigger for a mutual assent is the use of the card, not the acceptance of the card? Correct. And what's your basis of arguing that? The Centoro case in Oregon is the basis for that. The use is the acceptance of the terms and conditions. But not when it says acceptance is acceptance of the card. I understand exactly your point, Your Honor. And I think that as a matter of law, you can sit here and say that that acceptance is not effective to create an agreement under Oregon law. But I do believe that the use of the card is what really triggers the acceptance of the agreement. But we don't fit the facts of Centoro. I mean, Centoro does not dispute he received the credit card at his request. That's not true here. That's simply not true here. You're right. The card was not requested. And let me take a step back. Because the way that the inmates receive their money back from the trust fund is not determined by NUMMI Financial or the bank. It's determined by the county. And the county in this particular instance has determined that the only way that they're going to return trust funds to inmates is through the use of a prepaid debit card. So you're right. The county and your client have decided to, let's do this arrangement whereby we'll not have to keep track of cash and hold cash. We're going to give them back a prepaid card. And your client has said magnanimously to the county, well, you're not going to have to pay for it because we're going to make that person over there foot the bill through the fees that are going to be charged on the card. And that person over there really doesn't have a say in the proposition. Now, does he or she? That's not true. Where does that person have a say? And in fact, that's simply not true, Your Honor. And that is one of the clear errors, factual errors in this record. Where does that person have a say? The person has a say is that when they receive the card, when they're released from jail, they receive it. So they have no option to get back the cash they turned in. They don't have a say there. That's correct. They're given a card. So their say is, I can give up my money or I've got this card. I've got to do something. They get the card. And there's an underlying assumption here that's been argued by the plaintiff, which is you can't get your money back unless you use the card. And that use involves incurring fees. On this record, that is simply not true. If you look at the cardholder agreement and the excerpts of the record, it's there. There's a five-day period from the time that the card is given to the inmate until the first monthly fee. Well, from what point in time? Is it from acceptance or when the inmate first has the opportunity to use the card? It's from acceptance. And how much of that time might have run before the inmate actually gets his or her hands on the card and able to use it? I'm sorry, I missed the first part of the question. How much time may have elapsed between that acceptance when your client starts the clock running and the inmate, the former inmate, released inmate, actually having the opportunity to do something with the card? They have five days. And you're not answering my question. I'm sorry. They have five days from the county's acceptance. No, no, no. That's absolutely not true. They have five days from the date that they are given the card. The card can't answer the question I posed, and that's not the answer you gave me. I must have misunderstood your question here, Your Honor. The time begins to run when the inmate receives the card from the jail. That's not correct. We have a factual finding by the district court that this is based upon the 30B6 deposition of your corporate representative, who said that, oh, I think it's, this is actually loaded when it's, when the money is loaded into the card, the clock starts ticking. And it's loaded into the card when the county says, we need, this is for each person, we have these cards. And so it's before, before they even get the card, it's already been, it's, the clock has started to tick. I think what's going on here. You have a factual finding to that effect. But that factual finding is clearly erroneous based on this record. Based on your client's designated witness. But here's what happens. The card cannot be loaded with cash until the inmate is released. And the activation of the card doesn't occur until that load occurs. It's just simply a plastic card until that point in time. And nothing, there are no fees that can occur to it, nothing like that. When the inmate receives the card as they walk out of the facility, the time begins to run at that time. And they have five days before the first monthly fee is incurred. In that five-day period, they have two opportunities to get their money back that do not involve use of the card and that do not involve assessment of fees. One is — Roberts. Doesn't that go to the, that goes, that's really a defense you have that you can assert in, you know, in, in whether arbitration or in litigation, wherever. But that's a separate question from whether or not we actually have a contract. The question is whether we have, the question for us is do we have a contract between these parties that includes this arbitration clause. And I don't see that, what you're just, the points you just made go to defenses you can raise on the merits down the line. That doesn't go to whether or not a contract actually exists. And what we have in terms of the record is a 30B6 testimony from your representative saying this card is loaded from before it's given to the, the inmates, before they're released, it's loaded, and the clock starts to tick then. And if they don't accept it, it doesn't matter. It's just going to be drained down over time by the, these fees. So how is that a sin? How, how does anybody agree to, to any of this? Here's, here's what happens. They have an opportunity to reject the card. And the, the very important point, Your Honor, is that use of the card is acceptance of the terms and conditions and the, and the formation of the contract. What happens is, and, and the reason that the 5-day period and the ability to get the money off of the card without using it is important, that's the ability to reject this circumstance. They can literally, in two ways, they can transfer it from the card to their own bank account, they can walk into a bank and they can surrender the card to the bank and get the money off of it. It doesn't cost them anything. Roberts. Counsel, I, I'm somewhat sympathetic to that argument. If it really is, the trigger is really use, then that makes some sense. You have, you know, 5 days to decide whether or not to incur the fees or transfer it out with no fees. That, that makes some sense. But the problem is, really, the card, the, this cardholder agreement says it's on acceptance. And I just can't get over that fact. I mean, if, if it says acceptance and, you know, NUME drafted these contracts, so, you know, the, all, all ambiguities go against the drafter. So why, why, why can't we just say it's at acceptance and, therefore, the district court is correct? I think that that short-circuits the contract formation analysis under Oregon law. But why? Because it says contract is formed at acceptance of the card. So that doesn't short-circuit anything under, under its own words. Well, the question is whether there's mutual acceptance, Your Honor, and that's under the law. And under Oregon law, you have, you have to find out what is the offer that is being given. And then is there acceptance, explicit acceptance, or is there acceptance by use? That's how you determine whether or not under Oregon law that there has been a contract that has been formed. I understand that the card agreement says acceptance is acceptance of the terms and conditions. I think legally that under Oregon law, and again, these cardholder agreements are used all over the country. Under Oregon law, that's probably not effective to say that a contract has been formed. But once the use has occurred, that does form the contract. In the Centoro case, contrary to what the district court found. So the district court here found that the trigger was acceptance of the card. You would agree that if that really was a trigger, that would not form acceptance, and that's not proper mutual assent, right? Yes, I do. And I think here's the fundamental, what the district court really found, and I think you can fairly summarize the decision, is that there can be no mutual assent where an inmate receives an unsolicited prepaid debit card, the use of which is the only way the person can obtain a return of their money on the account. And that factual scenario is inconsistent with the record, with the agreement itself. Because it can be, they can get their money back fee-free within five days, and it doesn't require use of the card, as I've explained. You can surrender the card at a master card affiliate bank. But you already told us the agreement. We can't rely upon the terminology in the agreement, so I'm not sure why everybody else should be able to accept the proposition that the bank's not going to change how it works on its own. You just told us the word acceptance isn't triggered by activation of the card, it's triggered by use. I believe that, here's my fundamental point here, Your Honor, is that acceptance of the However, the use of that card is something that triggers acceptance. Including all the terms in the agreement, which gets us finally to what is the subject matter of this case, the arbitration clause. Why is it we should view that, which is inconsistent with the terminology of the agreement, as being sufficient mutual assent to the whole agreement, including the arbitration clause? Because that's Oregon law. Well, you pointed me to Centoro, and it's not Centoro, so what is it? Well, here's the, if it's not Centoro, what Oregon case gives me that proposition? Centoro is the case. Yeah, but Centoro tells us explicitly it's about somebody who'd previously requested a card, and that's not true here. Your Honor, the solicitation of the card in Centoro is not the basis for the decision. That is not the basis for the decision. In fact, the Centoro case, if you look at what the Oregon Court of Appeals said, and it relied on a Georgia case, and the analysis is this, and it's a very straightforward offer and acceptance. Centoro relied on a Georgia decision, Davis v. Discover Bank. Here's what the court said. The issuance of the card to the defendant amounted to a mere offer on the plaintiff's part, and the contract became entire when the defendant retained the card and thereafter made use of it. Similarly, here, Centoro's conduct in using the card constituted mutual assent to the terms of the credit card agreement. That is the holding of Centoro. It has nothing to do with whether the card was requested or not. I see I'm out of time, and I'd like to reserve the rest of my rebuttal. Thank you. Thank you, counsel. Good morning, Your Honor. Rick Spoonimore for the plaintiff, Dantia Brown, and the class of Oregon card recipients that she represents. Before I jump into my introduction, I believe that the appellant here just kicked away their case by conceding that acceptance is not the question. We have here a cardholder agreement. That is what they are seeking to enforce. This cardholder agreement is given to the releasees as they depart from the jail or facility. They are trying to bind my clients to that cardholder agreement, which says in the very third line that acceptance of this is – constitutes a contract. They're now saying they're trying to change the form and the language of the very contract they are seeking to bind my clients to. You can't have a Mushi contract that says one thing and then when it comes time to try to enforce it and there's a legal problem with it to say, no, no, no, that's not what we really mean. My clients have the right or the expectation when they're forming a contract to know exactly what this contract is. But the card itself does say by using this card you're accepting the contract. Yeah. Let me address that in two ways. First of all, there's no indication that the card is the agreement. The card can be a summary or can be a – it's very short form. It does not purport to be the entire agreement. It doesn't have fees on it. It doesn't have any of the material terms. That's the cardholder agreement. That's what they're seeking to enforce. And that's the core document here. Secondly, let me address very specifically the use question, since this is where this is sort of shaken out. If you look from the testimony from Numi's president, and this appears in Supplemental Excerpts of Record, page 87, very critical point. He is asked with respect to use, if a cardholder tries to get a check within that 5-day period, is that use of the card? And he says unequivocally, yes, it is. Use of the card is anything that you do to try to get the money off of the card. So you're given this card upon release. The agreement is attached to it. You have no opportunity to read it. Already, the card was preloaded, and once it's loaded, the clock begins to tick. And five days later, you're assessed a fee. And at that point, even if you called up the defendant and said, I want a check, their own president on 87 Supplemental Excerpts of Record, there at the very bottom I noticed that you're looking at it, says, absolutely, that would be use of the card. You know, this is a godfather-esque offer in acceptance. I mean, it's an offer you can't refuse, because if you say no to acceptance of the card and you leave it on the desk, their 30b-6 witness says, well, the money disappears, fees are assessed, it's charged away. So even if you don't accept it, you lose all your money. If you accept the card and then go on to use it to go to an ATM or to go to call up the defendant to get a check, their president says, that's use. And if you don't use the card by calling to get a check by using the ATM, all the card disappears by these fees. You know, it really is this liberty interest. And use the card and take out all the money. Presumably, there's nothing for the fees to collect against. Well, but you have the question here before this court, unlike Brown 1, is the arbitration clause. Have my clients mutually assented through conduct, either through acceptance, which I hear they kick away, or use of the card? Let's change the question. Is there a way to avoid agreeing or giving mutual assent to an agreement that includes the arbitration clause? It is impossible if you want your money. That's the bottom line here. If you, say you actually knew about this when the card was handed to you, and you say, I don't accept it. You leave it on the desk. I don't even want to touch this thing. There is no way to get your money back. Your money will disappear. That's the 30B6 deposition testimony of their own person. If you accept the card and say, OK, it's my only alternative. If you accept the card, and you walk outside, and even if you know I now have five days to try to get my money back, and you immediately go to a phone, and you call up the defendant and say, I want a check issued, they're going to say, as they did, their president said on page 87, that's use. Because the money is already on the card. And to get the money off the card, you have to use it. That's the rule of principle. At that point, it becomes a factual question. And then it doesn't seem like you would be ripe for a class action, right? Because that's a dispute of whether or not that constitutes use. What rights? No, we don't dispute that. We agree that the defendants take the position that once the card is loaded with money, you have to use the card in some form to get it back. So it's like any other debit card. It has a number assigned to it. And once they load the card, the money is in that account. And to get the money off of it, you have to call up and give them the number. If you don't dispute that, then you're saying that you've mutually assented at that point. Not at all. I'm saying that there can be no mutual assent if it is involuntary. Right, so that seems like a factual question, whether or not it's voluntary or not. What if someone received the card, read all the small print and said, okay, that seems fine to me, I'm going to use it. Wouldn't that be mutual assent? The record here, Your Honor. Correct, because it's a class action. There is no record. But there is. And here's the fundamental problem of what they're arguing now, as opposed to what they were arguing before the district court. Before the district court, and if you take a look at their brief, and this is the supplemental excerpts record, page 15, where they outlined their arguments to the district court. They moved on a class-wide basis that all of the class members had accepted the arbitration provision. They argued that acceptance, they argued that use of the card, and they argued that the fact that people didn't opt out of the arbitration, all of that on a class-wide basis indicates that the arbitration clause is enforceable. We responded in kind, and we said, no, you have to understand that none of the class members requested this card, there's no alternative offered, and that they had to accept and use the card to get their money back. And you can't infer objective manifestation of mutual assent on those facts. They never raised in the record, no declarations, no affidavits, no evidence at all that there is anything outside that class-wide pattern. And because we are looking at an arbitration agreement, it is the defendant's burden to prove the existence of an agreement to arbitrate by preponderance of the evidence, and they would have to come in and say, well, look, here are some people who did want it and did like it, and they read it, that evidence isn't in the record. Now they're coming before this Court with a complete shift. Rather than arguing on a class-wide basis, and again, their brief is very clear, it's a class-wide issue. They're now coming to this Court and saying the district court erred because the district court didn't ask whether there were any communications with class members before they were handed the card, whether class members read the agreement, and whether there were, quote, other communications or acts by each class member that demonstrate the agreement to be bound. That was not argued at all in the district court. It's nowhere in their brief. Their brief was brought on a class-wide basis. So when they're saying that the district court erred by not considering whether class members had read the agreement, well, it's their burden to enforce to show that there was an agreement. They need to come forward with affidavits, declarations, just like under the summary judgment standard, which is applicable here, to raise a question of fact that the district court can consider. But they punted that away. There's no declaration. There's no affidavit. There's no testimony from anybody, people at work at the facilities, people at the defendant's offices, potential class members, anybody that raises a whisper of a – even a scintillant of evidence that anybody wanted this card, read the agreement, or did anything on an individualized basis. That was not the argument they made before the district court. And for them to come before this court and raise an entirely new theory, which is, oh, now we have to go back to the district court and do this individual by individual analysis, that's not what they argued. They argued that this could be decided on a class-wide basis upon acceptance of the card, use of the card, or the failure to opt out. The only thing in their brief before the district court where they ever mentioned a individual analysis is the very last argument they made, is they said arbitration should be granted for all these reasons, but if the plaintiff, if we come forward with factual, disputed evidence, then you have to hold a trial if we do that. We didn't. We were perfectly happy to engage them on the playing field that they set, which is, is acceptance of the card evidence of mutual assent to be bound?  Objective evidence, and is the failure to opt out of the arbitration clause mutual acceptance? And the answer to all of those, as the district court found, because those were the issues that were put in front of him, was no, no, and no. They can't then come before this court and raise issues and arguments that the district court aired when they never asked the district court to consider those questions. There's an additional argument that I would like to mention briefly, and that's the question of waiver. And this is an interesting question in the context of this particular case. We learned last term with the United States Supreme Court that the principle of waiver as applied to arbitration clauses is not applied in any special way in the arbitration context. It is applied under standard common waiver principles, which is, did the defendants know they had a right to arbitrate, and did they act in ways that were inconsistent with that right? Well, we know about the clause, they knew about it, they drafted it. So the question is, did they engage in conduct that was inconsistent with their right to now compel arbitration? For the last six years, defendants have brought three motions to dismiss on the merits and two motions for summary judgment on the merits. Defendants even arranged to have their most recent motion for summary judgment heard before the motion for class certification. They knew that we were bringing a motion for class certification, and they asked or granted the right to bring a motion on the merits for summary judgment before that. In short, the defendants, when it suits their advantage, have been perfectly happy to, for years, use the judicial forum. But didn't they only just notice the summary judgment, not they didn't actually – you didn't actually litigate it before? The summary judgment was litigated before class certification. No, after – I thought there was a motion for summary judgment after class certification. There was a motion for summary judgment after class certification as well. The motion for summary judgment came before class certification. So they made three motions to dismiss, you know, we went out to the Court of Appeals, up to you guys, and came back down. Then when it was reset, they said, oh, Your Honor, we want to make a motion for summary judgment. And at the same time, we were saying, now it's time for class certification. Right. And the Court said, okay, I'll hear the summary judgment if you guys want to bring it. That was litigated. And then the class certification motion was litigated. Right. And then they filed a motion for – to compel arbitration of the class as soon as the class was – After the class was certified. But here's – Well, that doesn't make – doesn't that make sense? How are you going to file a motion to compel arbitration of a class if the class doesn't exist yet? Well, because here's why it makes sense. It's because they knew that we were making a motion for class certification. And if they thought that arbitration was the proper form for the merits to be decided on this case, the proper method is to wait for class certification and then move to compel arbitration before saying, you know, because the principle here is, oh, the merits, that should be decided in arbitration. But what they're doing is they're saying, well, we want the district court to decide the merits and want to leapfrog this thing to try to get – use the judicial forum. And, you know, if we lose in class certification, then we'll try to compel arbitration. That does not advance the principle of arbitration, which is designed to be a cost-effective, streamlined way to resolve. It's gamesmanship. They get two bites at the apple, because if arbitration – Was this motion to compel arbitration with regard to Ms. Brown's individual claim? That was brought early on, but then they waived that. So here's the sequence. They waived arbitration of the individual plaintiff's claims. They litigated – How did they waive it? They waived it through their conduct. Exactly what I'm arguing here today is they used the Federal Judicial Forum to advance merits-based arguments that they're now claiming should have been advanced in an arbitrable forum. The district court made such a finding, correct? Yes. And so that wasn't appealed? That was not appealed, correct. Yes. So they waived arbitration of the plaintiff's claims. They then litigated this case to the hilt on the merits, hoping to win on the merits in the judicial forum. When that didn't happen, they then waited until class certification, and then they say, aha, now we want to force this off of it. Let me ask you about the summary judgment. So let's just – under the sequence of events as it happened here, let's assume the summary judgment had gone the other way and they had won. That would have been binding on Ms. Brown, right? And then we have class certification, but that decision's not binding on the class. So then – but effectively, it would be – I guess you would then – they would then move for a summary judgment on a class-wide basis and just say, for the same reasons we got it already. Well, we would have big problems moving for class certification with a plaintiff that had no claim. I mean, there's a motion for summary judgment was on the merits of the electronic funds – You could just swap in somebody else. I mean, you could just swap in a new plaintiff, couldn't you? Yeah. Theoretically, you could file a whole new claim. But of course, the statute of limitations is just one year, and this has been going on now for six. So a huge part of the class would be lost. But the point is you've got to choose your forum. You can't say we like the judicial forum and litigate that for six years, three motions to dismiss, two motions for summary judgment, and then when you don't like that result and the class gets certified to say, oh, this is totally the improper forum, we need to go off to arbitration. The conduct of the defendants throughout this litigation, both with respect to the main And for that reason, we believe that they have also waived the right to arbitrate. Thank you very much. Perfectly timed. Thank you, counsel. Thank you, Your Honor. I have two points to make. First of all, we did make the argument that use of the card was acceptance of the terms and conditions to the district court. That argument was completely short-circuited by Judge Mossman's decision in which he because the card wasn't requested. We've made that argument here. When we turn to the waiver issue, there's a bit of a sleight of hand going. I'm sorry. Before we get to that, can you address the point that the three ways to get the money out of the card before five days? I'm sorry. There's two ways to do it without using the card. Number one, you can do what is called a card-to-bank account transfer. You literally transfer. You go on the Internet. But it sounds like the president of your client has said that that is use. Not on that, no. Not on that, he didn't. With the check, he said use. The other one is that you surrender the card at a MasterCard-affiliated bank. That's not use of the card. And if somebody's going to make the argument that it is, that's a factual issue that we have to deal with. But I don't believe it's use if you just go surrender the card and get your money out. He's using it colloquially, not necessarily as a legal matter of saying that's a sin. Correct. On the waiver issue, there's a bit of a sleight of hand going on here. Number one, there was a waiver that Judge Mosman found as to Ms. Brown. Now, we weren't the typical defendant where we sat and we litigated the case for a long period of time before we moved for arbitration. There was a motion to compel arbitration as to Ms. Brown in response to her complaint. And there was no discovery that happened. We did bring two motions to dismiss. And on that basis, Judge Mosman, as to Ms. Brown, found that there was waiver. When we got back to the district court on remand, every step of the procedure and the motion practice was dictated by the district court. We didn't ask for a particular order in which things were going to be resolved. Judge Mosman made those decisions himself. And if you look at the district court record at the scheduling orders, Judge Mosman spells out, plaintiff gets to file an amended complaint. Here's what's going to happen. You're going to have a motion for summary judgment. Then we're going to have a motion for class certification. Then after that, we had another status conference and he dictated when the motion to compel arbitration would be. Did you all affirmatively request that the motion for summary judgment be placed ahead of the certification on that schedule? We did not. Judge Mosman literally said, here's how the schedule is going to go. It just happened. We had a status conference. But no, I did not request that we file summary judgment before class certification. The judge decided which order. Okay. Did you object to that? Pardon me? Did you object to that and say, no, we'd rather have class certification first? No. I did not. I think your time is up. If you want to wrap up. Your Honor, unless any of you have any other questions, I've covered the point sufficiently. Thank you, counsel. This case will be submitted and we are adjourned for today. This honorable court now stands adjourned. Thank you.
judges: CLIFTON, BUMATAY, Baker